IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| GEMMA CHAN, | |
| Plaintiff, | |
| v. | Civil Action No. 8:12-cv-01735-AW |
| MONTGOMERY COUNTY MARYLAND, | |
| Defendant. | |

**MEMORANDUM OPINION**

Pending before the Court is Defendant's Motion to Dismiss. The Court has reviewed the record and deems a hearing unnecessary. For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Gemma Chan is an Asian female whom Defendant Montgomery County ("the County") hired in 2006, apparently as an IT specialist. Allegedly, two County employees sexually harassed Plaintiff between 2006–2009. As a result, on February 10, 2009, Plaintiff filed an EEO complaint with the County Government. At an unspecified time after she filed her EEO complaint, Plaintiff alleges that the County engaged in a series of retaliatory acts. They include:

i. Demoting Plaintiff by taking away a substantial duty of leading IT assessments;

ii. Documenting Plaintiff's work activity;

iii. Taking Plaintiff off of her IT projects;

iv. Refusing to assign Plaintiff work, with the result that Plaintiff had to request assignments and work independently;

1

      v. Denying Plaintiff opportunities for training and promotion;

      vi. Barring Plaintiff from working on business process requirement analysis;

      vii. Refusing to communicate with Plaintiff, withholding vital work information, and failing to inform Plaintiff of deadlines.

*See* Doc. No. 13-3 at 3–4. Plaintiff further alleges that the County did not engage in such acts with respect to other employees.

      In September 2010, Plaintiff allegedly learned that her salary was "disparately" lower than the salaries of her coworkers. *Id.* at 4. Plaintiff alleges that her salary "is lower than all Defendant IT employees two grades below her." *Id.* at 5. Plaintiff further alleges that two white males at Plaintiff's 28-level pay classification earn approximately $11,000 and $13,000 more than Plaintiff even though they have less education and experience than Plaintiff. Plaintiff continues that these two employees perform the same work as Plaintiff. Around the time Plaintiff learned that her pay was lower than that of her coworkers, Plaintiff requested a pay raise. On April 14, 2011, the County denied Plaintiff's request for a pay raise.

      Plaintiff filed an EEOC charge on June 10, 2011. Subsequently, on June 13, 2012, Plaintiff filed a Complaint, which she subsequently amended twice. *See* Doc. Nos. 1, 6, 13-3. Plaintiff asserts state and federal claims for retaliation, race discrimination, and gender discrimination. Plaintiff also asserts a federal claim for unequal pay under the Equal Pay Act.

      On January 31, 2013, the County moved to dismiss. The County argues that all of Plaintiff's claims are facially implausible. The County also attacks some of Plaintiff's claims on failure to exhaust grounds. The Parties have completed briefing on the County's Motion to Dismiss.

## II. STANDARD OF REVIEW

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In two recent cases, the U.S. Supreme Court has clarified the standard applicable to Rule 12(b)(6) motions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). These cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (quoting Fed. R. Civ. P. 8(a)(2)). This showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In deciding a motion to dismiss, the court should first review the complaint to determine which pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949–50. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. In so doing, the court must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County Commissioners*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

### III. LEGAL ANALYSIS

### A. Administrative Exhaustion

"In order to maintain an action under Title VII, a plaintiff must file an administrative charge with the EEOC within 180 days of the alleged misconduct." *Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004) (citation omitted). "This period is extended to 300 days in cases such as this, when state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency." *Id.* (citation and internal quotation marks omitted). Allegations based on incidents that take place more than 300 days after the alleged discriminatory event are entitled to no weight for the purposes of ruling on a motion to dismiss. *See Tasciyan v. Med. Numerics*, 820 F. Supp. 2d 664, 675 n.1 (D. Md. 2011) (citation omitted).

In this case, Plaintiff filed her EEOC charge on June 10, 2011. Therefore, Plaintiff may not rely on acts that took place before August 13, 2010. Although the continuing violation theory applies where the plaintiff proves that it would have been impossible for a reasonably prudent person to learn that an employment action was discriminatory, Plaintiff has neither alleged nor argued that the Court should consider acts before August 13, 2010 on this basis. Moreover, although Plaintiff argues that acts from the 2006–2009 period are subject to equitable tolling, this argument is manifestly without merit. Accordingly, with the one minor exception noted below, the Court will not consider acts before August 13, 2010.

### B. Retaliation

To establish her prima facie case of retaliation, Plaintiff must show that she engaged in protected activity, that the County took adverse action against her, and that a causal relationship existed between the protected activity and the adverse employment activity. *See King v. Rumsfeld*, 328 F.3d 145, 150–51 (4th Cir. 2003).

"An employee may satisfy the first element by showing that she opposed a practice that Title VII prohibits." *Tasciyan v. Med. Numerics*, 820 F. Supp. 2d 664, 675 (2011) (citing *Davis v. Dimensions Health Corp.*, 639 F. Supp. 2d 610, 616–17 (D. Md. 2009)). "One court has defined opposition as 'utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities.'" *Id.* (quoting *Davis*, 639 F. Supp. 2d at 617). "For such activity to constitute opposition, the plaintiff must have a reasonable and good faith belief that the conduct that she opposes constitutes unlawful discrimination under Title VII." *Id.* (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001)). "Opposition almost always arises when an employee communicates to her employer her reasonable belief that the employer has engaged in discrimination." *Id.* (citing *Crawford v. Metro. Gov't of Nash. and Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009)). Alternatively, "it is unlawful 'for an employer to discriminate against any of his employees . . . because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001) (alteration in original) (citing 42 U.S.C. § 2000e–3(a)); *see also, e.g.*, *Price v. Thompson*, 380 F.3d 209, 212–13 (4th Cir. 2004) (characterizing the plaintiff's EEO complaint as protected activity).

For an act to be adverse within the meaning of Title VII's antiretaliation provision, the plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation and internal quotation marks omitted). This standard is objective

and, to a significant extent, depends on the facts and circumstances of each case. *See id.* at 68–69.

Element three of the prima facie case for retaliation relates to causation. Generally, plaintiffs must demonstrate that the alleged opposition caused the at-issue adverse action through two evidentiary routes. First, plaintiffs may show that the adverse act bears sufficient temporal proximity to the protected activity. *See, e.g.*, *Breeden*, 532 U.S. at 273–74. Second, as this Court has consistently held, "plaintiffs may state a prima facie case of causation by relying on evidence other than, or in addition to, temporal proximity where such evidence is probative of causation." *Jenkins v. Gaylord Entm't Co.*, 840 F. Supp. 2d 873, 881 (D. Md. 2012) (citing cases); *see also, e.g.*, *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (holding that "other relevant evidence may be used to establish causation" where temporal proximity is missing).

In this case, Plaintiff has failed to state a facially plausible retaliation claim. Plaintiff seems to allege that two actions constitute protected activity: her filing of the EEO complaint[1] and her asking her employer for a pay raise. The Court agrees that filing an EEO complaint is protected activity. The Court will also assume that Plaintiff has adequately alleged that the County's denial of an allegedly deserved pay raise constitutes an adverse act. However, Plaintiff has insufficiently stated the element of causation. Temporal proximity is missing because Plaintiff filed her EEO complaint in early-February 2009 but the County did not deny her pay raise until mid-April 2011, over two years later. *See, e.g.*, *Breeden*, 532 U.S. at 264 ("Action taken . . . 20 months later suggests, by itself, no causality at all."). Plaintiff may respond that the actions enumerated above, such as taking Plaintiff off of projects and failing to give her assignments, are probative of retaliation. The Court disagrees. Plaintiff does not provide a date,

---

[1] As this act occurred before August 13, 2010, it is barred on failure to exhaust grounds. However, the Court will assume for the sake of argument that this allegation is not barred.

even approximate, for any of these acts. As a result, the Court is unable to infer the temporal proximity, or lack thereof, between these acts and the February 2009 EEO complaint. Similarly, the Court is unable to infer the temporal proximity, or lack thereof, between the last such act and the County's denial of a pay raise. Furthermore, although Plaintiff alleges that other employees faced no such acts, Plaintiff's allegations of a recurring retaliatory animus' lack specificity and are hardly probative of retaliation standing alone. Given the vagueness of Plaintiff's allegations, it is equally possible that some other factor (e.g., business necessity or unsatisfactory work performance) motivated the actions. Accordingly, taking Plaintiff's EEO complaint as the protected activity, Plaintiff has failed to state a facially plausible retaliation claim.

Plaintiff could argue that the September 2010 request for a pay raise constitutes protected activity. The Court disagrees. Although Plaintiff might have subjectively believed that the County had discriminated against her, Plaintiff does not allege that she voiced her opinion to bring the County's attention to its allegedly discriminatory activities, or otherwise communicated to the County her reasonable belief that it was discriminating against her in violation of Title VII. All Plaintiff alleges is that, after learning that her salary was "disparately" lower than that of her coworkers, she "requested a pay adjustment." Doc. No. 13-3 ¶ 39, at 5. This solitary, vague allegation is insufficient to support a plausible inference, inter alia, that the County knew that Plaintiff's request for a pay raise served as a discrimination complaint. *See Gibson v. Marjack Co., Inc.*, 718 F. Supp. 2d 649, 655 (D. Md. 2010).[2]

Furthermore, even if the September 2010 request for a pay raise constituted protected activity, Plaintiff's allegations still would fail to support a plausible inference of causation. In this event, more than half a year would have transpired between the protected activity and

---

[2] It is also unclear whether Plaintiff has adequately alleged that she had a reasonable belief that the County was discriminating against her. *Cf. Breeden*, 532 U.S. at 271.

Plaintiff's denial of a pay raise. *See Breeden*, 532 U.S. at 273 (suggesting that a "3–month period [is] insufficient"); *see also Hooven–Lewis v. Caldera*, 249 F.3d 259, 278 (4th Cir. 2001) (citation omitted) ("A six month lag is sufficient to negate any inference of causation."). And although Plaintiff argues that the events enumerated above are probative of retaliation, the preceding analysis reveals the deficiency of this argument. Consequently, Plaintiff's retaliation claim fails as a matter of law even if the September 2010 request for a pay raise constitutes protected activity.[3]

For the foregoing reasons, Plaintiff has failed to state a facially plausible retaliation claim. The Court dismisses her retaliation claim with prejudice seeing that it is ruling on a Second Amended Complaint.[4][5]

**C.     Gender Discrimination**

Generally, to make out a prima facie case of gender discrimination in the failure to provide a pay raise, Plaintiff must show that (1) she is a member of a protected group, (2) she

---

[3] Plaintiff argues that her "removal from key projects" constitutes a retaliatory act. The Court disagrees. The vague allegation that Plaintiff was removed from "key projects" does not support a plausible inference that such action might well have dissuaded a reasonable worker from making or supporting a charge of discrimination. Moreover, although Plaintiff does not specify when the County took her off of key projects, the allegations support the inference that it was before the September 2010 request for a pay raise. Therefore, the February 2009 EEO complaint would have to be the protected activity. However, Plaintiff cannot rely on this act on failure to exhaust grounds. Moreover, Plaintiff does not specify the temporal proximity, or lack thereof, between the EEO complaint and the time when the County allegedly removed her from key projects. Thus, one cannot plausibly infer a causal connection. And even if the allegations supported a plausible inference that the County removed Plaintiff from the key projects after the September 2010 request for a pay raise, the Court held above that one cannot plausibly infer that the request for a pay raise constitutes protected activity.

[4] Plaintiff also appears to argue that she has stated a retaliation claim based on unequal pay. The Court cannot draw a distinction between this theory and the theory that the County retaliated against Plaintiff by not giving her the pay raise that she allegedly deserved, which the Court addressed and dispatched above.

[5] Plaintiff based her February 2009 EEO complaint on allegations of sexual harassment. Although these 2008 actions took place approximately two years before the administrative cutoff of August 13, 2010, Plaintiff argues that the Court should consider them pursuant to the doctrine of equitable tolling. The Court rejects this argument outright. None of Plaintiff's vague allegations support a plausible inference that the County mislead or deceived Plaintiff into believing that she would not have to file an EEOC charge because she filed an internal EEO complaint.

asked for the pay raise, (3) she was qualified for the pay raise, and (4) the County rejected her request for a pay raise under circumstances that give rise to an inference of unlawful discrimination. *Cf. Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005) (citations omitted). The County does not dispute that Plaintiff, as a woman, is a member of a protected group. Furthermore, although the County disputes that Plaintiff was qualified for a pay raise, the Court will assume that Plaintiff has adequately alleged this element. Thus, the Court proceeds to analyze element (4).

Courts must decide whether a person has been denied a pay raise under circumstances giving rise to an unlawful inference of discrimination on a case-by-case basis. The following categories of evidence may be probative of unlawful discrimination depending on the facts of the case: (i) stereotypical remarks, code words, or other communication probative of sexual animus, *see Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989) (plurality opinion); *Tasciyan*, 820 F. Supp. 2d at 674; (ii) underrepresentation, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805 (1973) (citations omitted); (iii) statistical evidence and/or analysis, *see Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 339 (1977); (iv) evidence of discrimination against employees based on the same protected trait (i.e., "me too" evidence), *see Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008); and, of course, (v) comparative evidence, *see Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998).

In this case, Plaintiff has failed to state a facially plausible gender discrimination claim. Plaintiff has not alleged that the County communicated to her in a way indicative of sexual animus. Plaintiff has not alleged that women were underrepresented in her office or made any allegations regarding a policy, pattern, or practice of sexual discrimination by the County. Nor has Plaintiff alleged identifiable instances in which the County has discriminated against women.

Although Plaintiff alleges that a "minority" male received "a disproportionately lower pay package than other non-minority employees," the fact this employee is a male undercuts the inference that the County singled out Plaintiff because of her sex. Granted, Plaintiff alleges that she received lower pay than two similarly situated white males. However, Plaintiff also alleges that her salary "is lower than all Defendant IT employees two grades below her," Doc. No. 13-3 at 5, and Plaintiff does not specify the sex of these employees. Based on the sparseness and vagueness of Plaintiff's Second Amended Complaint, it is equally possible to infer that at least some of the lower-classified employees who make more money than Plaintiff are females. Thus, even construing Plaintiff's allegations in the most favorable light, one cannot plausibly infer that the County discriminated against Plaintiff based on her sex.

For the reasons stated above, the Court dismisses Plaintiff's gender discrimination claim. This dismissal is with prejudice seeing that the Court is ruling on a Second Amended Complaint.

**D.      Racial Discrimination**

The prima facie case for Plaintiff's racial discrimination claim is essentially the same as the prima facie case for her gender discrimination claim. To reiterate, Plaintiff must establish that (1) she is a member of a protected group, (2) she asked for the pay raise, (3) she was qualified for the pay raise, and (4) the County rejected her request for a pay raise under circumstances that give rise to an inference of unlawful discrimination. *Cf. Anderson*, 406 F.3d at 268 (citations omitted). It is undisputable that Plaintiff, as an Asian, is a member of a protected group. Furthermore, Plaintiff alleges that she asked for a pay increase. Although the County disputes that Plaintiff was qualified for the raise, the Court will assume the satisfaction of this element for analytical purposes. Hence, the Court proceeds to address element (4).

In this case, as with her gender discrimination claim, Plaintiff's allegations do not create a plausible inference that the County denied her pay raise under circumstances giving rise to an unlawful inference of discrimination. Plaintiff has not alleged any racial remarks, code words, or other language or acts from which one could plausibly infer a racial animus. Nor has Plaintiff alleged that Asians—or even racial minorities as a whole—were underrepresented in her office, or that there is otherwise statistical evidence suggestive of racial discrimination. As for "me too" evidence, Plaintiff alleges that a minority employee, Selwyn Jones, received a "disproportionately lower pay package." However, absent further factual enhancement, this stray and indefinite allegation does not support a plausible inference of racial animus. Even if it did, Plaintiff does not specify Jones's race, and it is unclear that, presumptively, it is plausible to infer that a person who discriminates against members of one racial minority (e.g., African-Americans) harbors racial animosity against members of another racial group (e.g., Asians). Finally, although Plaintiff alleges that two similarly situated white males received higher pay, this allegation is likewise stray and indefinite. Moreover, as noted, Plaintiff's allegation that her salary "is lower than all Defendant IT employees two grades below her" is equally amenable to the inference that some of the lower-classified IT employees with higher pay are Asians. Therefore, even assuming the truth of Plaintiff's allegations and construing them favorably, Plaintiff has failed to state a cognizable racial discrimination claim.

Based on the foregoing analysis, the Court dismisses Plaintiff's racial discrimination claim. This dismissal is with prejudice. To reiterate, the Court is ruling on a Second Amended Complaint. As Plaintiff has had three opportunities to state facially plausible discrimination

claims, lending her leave to amend her Second Amended Complaint portends only further futility.[6]

**E.    Equal Pay Act**

Plaintiffs bringing claims under the Equal Pay Act must establish a prima facie case of discrimination. *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 343 (4th Cir. 1994). "Under the Equal Pay Act, the plaintiff must show that an employer has paid different wages to employees of opposite sexes for equal work in jobs which require equal skill, effort and responsibility and which are performed under similar working conditions." *Id.* (citations omitted).

In this case, the Court believes that Plaintiff has stated a cognizable claim for relief under the Equal Pay Act. Plaintiff has alleged that she was paid less than two white males for equal work despite equal or superior experience and/or qualifications. Although Plaintiff's Complaint lacks specifics with respect to the nature of her job versus those of her male comparators, her allegations overall support a plausible inference that she received unequal pay for equal work.[7]

**IV.    CONCLUSION**

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** the County's Motion to Dismiss. A separate Order follows. The Court will issue a Scheduling Order.

| April 24, 2013 | /s/ |
|---|---|
| Date | Alexander Williams, Jr.<br>United States District Judge |

---

[6] Plaintiff concedes that his state law claims for retaliation and discrimination would be judged under Title VII standards. *See* Doc. No. 22-1 at 7 n.2 (citations omitted); *see also, e.g.*, *Blakes v. City of Hyattsville*, Civil Action No. 10–CV–3585 AW, 2012 WL 5566784, at * 11 (D. Md. Nov. 14, 2012) (citations omitted). Therefore, the Court need not analyze these claims separately.

[7] It is somewhat unclear whether Plaintiff also seeks to base her Equal Pay Act claim on her race. At some point in the proceedings, Plaintiff likely will have to clarify under what theory of relief (e.g., sex, race, or intersectional) she is proceeding.